IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

WILLIAM H. MENDENHALL,

        Plaintiff,

    v.

UNITED STATES,

        Defendant.

Case No. 3:20-cv-00156-SLG

## ORDER RE MOTION TO DISMISS

Before the Court at Docket 7 is Defendant United States' Motion to Dismiss. Plaintiff William H. Mendenhall responded in opposition at Docket 8. The United States replied at Docket 10. After conducting limited jurisdictional discovery, Plaintiff filed a supplemental opposition at Docket 16.[1] The United States filed a second reply in support of its motion at Docket 17. Oral argument was not requested and was not necessary to the Court's decision. For the following reasons, the United States' Motion to Dismiss will be granted.

---

[1] Prior to a ruling on the Motion to Dismiss, Plaintiff filed a Motion to Stay Decision on Defendant's Motion to Dismiss at Docket 9. Defendant responded in opposition at Docket 11. Plaintiff replied at Docket 12. The Court construed the motion as one for jurisdictional discovery and granted limited discovery at Docket 13.

## BACKGROUND

The Court set forth the factual and procedural background of this case in its Order Imposing Stay and Granting Request for Jurisdictional Discovery.[2] In summary, Plaintiff initiated this action in state court, alleging that he was assaulted and battered by John Ireton, a security guard employed by the Alaska Native Tribal Health Consortium ("ANTHC").[3] Pursuant to the Federal Tort Claims Act ("FTCA"), Defendant United States removed the action to federal court and substituted itself as the defendant.[4] Because the question of whether Mr. Ireton was acting within the scope of his employment at the time of the incident was potentially dispositive for FTCA purposes, the Court ordered limited discovery on that issue.[5] The parties conducted discovery and filed supplemental briefings.[6]

---

[2] Docket 13 at 1–4 (Discovery Order).

[3] *See generally* Docket 1-1 (Compl.). ANTHC operates the Alaska Native Medical Center ("ANMC"), a medical campus in Anchorage.

[4] Docket 1 (Notice of Removal); Docket 3 (U.S. Attorney Certification).

[5] *See generally* Docket 13 (Discovery Order). The Court also ordered that the parties could conduct discovery regarding whether Mr. Ireton was an "investigative or law enforcement officer" at the time of the incident. Docket 13 at 10 (Discovery Order).

[6] Docket 14 (Joint Status Report); Docket 16 (Supp. Opp.); Docket 17 (Second Reply). Plaintiff filed a related case on December 31, 2020. *Mendenhall v. United States*, Case No. 3:20-cv-00312-SLG. The related case concerns the same underlying events here. *See* Docket 16 at 10 (Supp. Opp.) ("Mr. Mendenhall has filed a separate claim solely for negligence against the United States under the FTCA because ANTHC was negligent for several reasons outlined in that complaint.").

Case No. 3:20-cv-00156-SLG, *Mendenhall v. United States*
Order re Motion to Dismiss
Page 2 of 15

Case 3:20-cv-00156-SLG   Document 19   Filed 03/17/21   Page 2 of 15

## LEGAL STANDARD

The FTCA is the exclusive remedy for torts committed by employees of the United States while acting within their scope of their employment.[7] Pursuant to the Indian Self-Determination and Education Assistance Act ("ISDEAA"), "Congress provided that Indian tribes, tribal organizations, Indian contractors, and their employees, may be deemed employees of the [United States] for purposes of the FTCA when they are carrying out functions authorized in or under a self-determination contract."[8] The FTCA only applies to claims based on the conduct of a federal employee, including those deemed an employee under the ISDEAA, who was "acting within the scope of his office or employment."[9]

The Federal Tort Claims Act provides for a limited waiver of sovereign immunity by granting federal district courts jurisdiction over "civil actions on claims

---

[7] *United States v. Smith*, 499 U.S. 160, 166 (1991); *Wilson v. Drake*, 87 F.3d 1073, 1076 (9th Cir. 1996).

[8] *Colbert v. United States*, 785 F.3d 1384, 1390 (11th Cir. 2015) (citing Pub. L. No. 101–512, § 314, 104 Stat. 1915 (1990) ("[A]n Indian tribe, tribal organization or Indian contractor is deemed hereafter to be part of the Bureau of Indian Affairs in the Department of the Interior or the Indian Health Service in the Department of Health and Human Services while carrying out any such contract or agreement and its employees are deemed employees of the Bureau or Service while acting within the scope of their employment in carrying out the contract or agreement.... [A]fter September 30, 1990, any civil action or proceeding involving such claims brought hereafter against any tribe, tribal organization, Indian contractor or tribal employee covered by this provision shall be deemed to be an action against the United States and will be defended by the Attorney General and be afforded the full protection and coverage of the Federal Tort Claims Act.")).

[9] 28 U.S.C. § 1346(b)(1).

Case No. 3:20-cv-00156-SLG, *Mendenhall v. United States*
Order re Motion to Dismiss
Page 3 of 15

Case 3:20-cv-00156-SLG   Document 19   Filed 03/17/21   Page 3 of 15

against the United States . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment."[10]  The Act does not waive sovereign immunity for certain categories of claims, including those "arising out of assault, battery, [or] false imprisonment."[11]  In addition, the FTCA requires a plaintiff to first exhaust administrative remedies before pursuing a claim in federal court.[12]

The question of whether the United States has waived its sovereign immunity under the FTCA is one of subject matter jurisdiction and may be considered under either Federal Rule of Civil Procedure 12(b)(1) or 12(b)(6).[13]

## DISCUSSION

Defendant contends that Mr. Ireton, an employee of ANTHC, was acting within the scope of his employment at the time of the incident and, therefore, he is "deemed" a federal employee for FTCA purposes pursuant to the ISDEAA.[14]

---

[10] 28 U.S.C. § 1346(b)(1).

[11] 28 U.S.C. § 2680(h).

[12] 28 U.S.C. § 2675(a).

[13] *See McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988) (applying Rule 12(b)(1) to motion to dismiss FTCA claim); *see also Brownback v. King*, 141 S. Ct. 740, 749, 749 n.8 (2021) (holding that in FTCA case, when "pleading a claim and pleading jurisdiction entirely overlap," the district court may dismiss the claim under Rule 12(b)(1) or Rule 12(b)(6), or both).

[14] Docket 17 at 14 (Second Reply).

Case No. 3:20-cv-00156-SLG, *Mendenhall v. United States*
Order re Motion to Dismiss
Page 4 of 15

Case 3:20-cv-00156-SLG   Document 19   Filed 03/17/21   Page 4 of 15

According to Defendant, the Court lacks subject matter jurisdiction because Plaintiff did not exhaust his administrative remedies as required by the FTCA and, alternatively, because there is no relevant waiver of sovereign immunity pursuant to the intentional torts exception.[15] Plaintiff responds that Mr. Ireton was "not a federal employee" and, alternatively, acted outside the scope of his employment, such that the FTCA's provisions—including the intentional torts exception and exhaustion of administrative remedies requirement—do not apply.[16] Plaintiff also asserts that, even if Mr. Ireton was acting within his scope of employment, Plaintiff may still move forward with negligence claims against Mr. Ireton in his personal capacity.[17] Plaintiff further asserts that he can still bring other constitutional and civil rights claims because those claims purportedly "cannot be barred or dismissed under FTCA."[18]

### I. Federal Employee

Plaintiff asserts that Mr. Ireton "was not a federal employee" at the time of the incident.[19] Although employees of ANTHC are not actually employed by the

---

[15] *See generally* Docket 7 (Mot. to Dismiss); Docket 10 (Reply); Docket 17 (Second Reply).

[16] Docket 8 at 2 (Opp.); Docket 16 at 2, 4, 6 (Supp. Opp.).

[17] Docket 16 at 8 (Supp. Opp.).

[18] Docket 16 at 11–12 (Supp. Opp.).

[19] Docket 16 at 4, 6 (Supp. Opp.).

Case No. 3:20-cv-00156-SLG, *Mendenhall v. United States*
Order re Motion to Dismiss
Page 5 of 15

Case 3:20-cv-00156-SLG   Document 19   Filed 03/17/21   Page 5 of 15

United States, they are "deemed" to be so for purposes of the FTCA pursuant to the ISDEAA, so long as they were acting within the scope of their employment.[20]

## II. Scope of Employment

When removing this civil action from state to federal court, the U.S. Attorney certified that Mr. Ireton "was acting within the scope of his office or employment."[21] That certification "is prima facie evidence that [Mr. Ireton] was acting in the scope of [his] employment at the time of the incident."[22] A party seeking to challenge the scope of employment certification "bears the burden of presenting evidence and disproving the [U.S. Attorney's] certification by a preponderance of the evidence."[23]

"FTCA scope of employment determinations are made 'according to the principles of *respondeat superior* of the state in which the alleged tort occurred.'"[24] Here, the alleged tort occurred in Alaska. Under Alaska law, "[t]he scope of employment is a fact specific inquiry for the jury unless the facts are undisputed or lend themselves to only one conclusion."[25] Relevant factors include whether the

---

[20] *See* 25 U.S.C. § 5321(d); Pub. L. No. 101-512, § 314, 104 Stat. 1915 (1990); Docket 3 (U.S. Attorney Certification).

[21] Docket 3 (U.S. Attorney Certification); 28 U.S.C. § 2679(d)(1).

[22] *Billings v. United States*, 57 F.3d 797, 800 (9th Cir. 1995).

[23] *Id.*

[24] *Drake*, 87 F.3d at 1076 (quoting *Pelletier*, 968 F.2d at 876).

[25] *Lane v. City of Juneau*, 421 P.3d 83, 94 (Alaska 2018) (quoting *Ondrusek v. Murphy*, 120 P.3d 1053, 1057 (Alaska 2005)).

Case No. 3:20-cv-00156-SLG, *Mendenhall v. United States*
Order re Motion to Dismiss
Page 6 of 15

Case 3:20-cv-00156-SLG   Document 19   Filed 03/17/21   Page 6 of 15

employee "(1) performs the kind of work the employee was hired to perform, (2) acts within the employer's 'authorized time and space limits,' and (3) acts in order to further the employer's interests."[26] The Alaska Supreme Court has "noted that even crimes and intentional torts may be within the scope of employment if they serve the employer's interests[.]"[27]

The Court will address the relevant factors under Alaska law to determine whether Plaintiff has proven by a preponderance of the evidence that Mr. Ireton was not acting within the scope of his employment at the time of the incident.

**A. Performing the Kind of Work Employee Was Hired to Perform**

The Government maintains that Mr. Ireton was acting within the capacity for which he was hired as a security guard.[28] Plaintiff responds that Mr. Ireton's actions fall outside his scope of his employment because ANTHC did not have

---

[26] *Id.* at 95 (quoting *Williams v. Alyeska Pipeline Serv. Co.*, 650 P.2d 343, 349 n.10 (Alaska 1982)). The Alaska Supreme Court has recognized that these factors, which are provided by the Second Restatement of Agency, are relevant to the scope-of-employment inquiry, but "rejected the Second Restatement's view that each of the . . . factors must be satisfied prerequisite to recovery," holding instead that the factors "should be weighed by the fact-finder in each case." *Id.* at n.73 (quoting *Doe v. Samaritan Counseling Ctr.*, 791 P.2d 344, 347 (Alaska 1990)).

[27] *Id.* at 94–95.

[28] Docket 17 at 4–7 (Second Reply).

Case No. 3:20-cv-00156-SLG, *Mendenhall v. United States*
Order re Motion to Dismiss
Page 7 of 15

"formal" policies or training on the use of force and, as a result, Mr. Ireton used excessive force against Plaintiff.[29]

Mr. Ireton was hired as a security guard by ANTHC to work at the ANMC campus.[30] His responsibilities included responding to and "assist[ing] with medical emergencies, alarms and other security related occurrences," warning "violators of safety and security rules," and "restrain[ing] persons engaging in hostile or criminal acts."[31]

Mr. Ireton's actions during the incident are consistent with his job responsibilities. During the night of July 27, 2018, Mr. Ireton was working on the ANMC campus as a security officer.[32] After receiving a call for assistance from hospital staff, Mr. Ireton responded to the security-related incident at a patient's room, which involved Plaintiff.[33] Upon his arrival, Mr. Ireton attempted to "discuss things" with Plaintiff.[34] Mr. Ireton eventually warned, and then directed, Plaintiff to

---

[29] Docket 16 at 7–11 (Supp. Opp). Plaintiff does not expressly cite or discuss the relevant scope of employment factors under Alaska law. *See generally* Docket 16. For clarity, the Court addresses Plaintiff's broader scope-of-employment arguments under the first factor.

[30] Docket 17-1 at 7:10–22 (Ireton Dep.); Docket 17-2 (Offer of Employment).

[31] Docket 17-3 (Security Officer Job Description) (warning that a security guard may "encounter verbal abuse and/or combative customers or family members").

[32] Docket 17-1 at 7:23–8:14 (Ireton Dep.); Docket 17-4 (Ireton Time Card).

[33] Docket 17-1 at 17:11-22; 17-5 (Security Incident Report); *see also* Docket 17 at 5 (Second Reply).

[34] Docket 17-1 at 9:20–10:10 (Ireton Dep.).

Case No. 3:20-cv-00156-SLG, *Mendenhall v. United States*
Order re Motion to Dismiss
Page 8 of 15

Case 3:20-cv-00156-SLG   Document 19   Filed 03/17/21   Page 8 of 15

leave because he was violating safety and security rules.[35] While Mr. Ireton attempted to escort Plaintiff out, Plaintiff elbowed Mr. Ireton, moving him backwards.[36] Mr. Ireton responded by taking Plaintiff to the ground and then sitting on his buttocks and placing his arms behind his back—in other words, restraining a person engaged in a hostile act.[37] Thus, Mr. Ireton's alleged actions during the incident appear consistent with the type of work he was hired to perform.

Plaintiff does not directly dispute that Mr. Ireton was performing the type of work he was hired to do. Instead, Plaintiff asserts that "Mr. Ireton's use of force against Mr. Mendenhall falls outside the scope of his employment" because ANTHC did not have a "formal policy authorizing . . . security guards to use force when dealing with individuals on campus" or a formal training program for use of force.[38] The Court does not find this argument persuasive. First, Plaintiff does not explain how Mr. Ireton's on-the-job training is insufficient or what would constitute an adequate "formal" training regimen.[39] Second, ANMC has written policies

---

[35] Docket 17-1 at 45:24–46:24 (Ireton Dep.). Other ANMC staff, including the Behavioral Health Specialist, and another patient had also asked Plaintiff to leave. Docket 17-1 at 16:18–17:1, 18:22–19:19 (Ireton Dep.). Plaintiff was allegedly requesting paperwork of a patient to whom he was not related. Docket 17 at 5 (citing Docket 17-1 at 7:11–18:5 (Ireton Dep.)).

[36] Docket 17-1 at 24:22-25:4 (Ireton Dep.).

[37] Docket 17-1 at 25:5–28:8 (Ireton Dep.).

[38] Docket 16 at 7 (Supp. Opp).

[39] Docket 16 at 6–11 (Supp. Opp.); *see also* Docket 17-1 at 19:23–20:1, 32:18–33:3, 35:19–22, 36:20–37:7, 37:19–38:14. (Ireton Dep.) (describing on-the-job training).

Case No. 3:20-cv-00156-SLG, *Mendenhall v. United States*
Order re Motion to Dismiss
Page 9 of 15

Case 3:20-cv-00156-SLG   Document 19   Filed 03/17/21   Page 9 of 15

regarding the use of force, and Mr. Ireton acknowledged that, as an ANTHC employee at ANMC's campus, he had reviewed those policies.[40] While Mr. Ireton did not specifically recall these policies at his deposition, his testimony demonstrated that his understanding of the appropriate amount of force was consistent with ANMC's policies.[41] Third, Plaintiff cites no legal authority for the proposition that a lack of "formal" training or policy means Mr. Ireton was acting outside the scope of his employment.

Plaintiff also asserts that Mr. Ireton used excessive force and, therefore, he was acting outside the scope of employment.[42] Plaintiff does not adduce sufficient evidence that Mr. Ireton did, in fact, use excessive force. Further, even if Mr. Ireton used excessive force, he could still be acting within the scope of his employment under Alaska law.[43]

---

[40] Docket 17-8 at 3 (Security Policies Reference Binder).

[41] *Compare* Docket 17-1 at 22:9–12, 38:9–14 (Ireton Dep.) ("Q. What is your understanding about force that you? A. Use the minimal amount of force to prevent injury to myself or others.") *with* Docket 17-9 at ¶ 3.7 (Code Gray Procedures) ("The Code Gray responders will use a progressive approach to manage the threatening or aggressive individual and to minimize harm and use the least force necessary to control the situation.") *and* Docket 17-10 at ¶ 3.2.4 (Security Management Program Procedure) ("Security officers shall use the least amount of force necessary to restrain or to control situations such as a combative or unruly individual . . . .").

[42] Docket 16 at 8–10 (Supp. Opp).

[43] *See Lane*, 421 P.3d 83 at 94–95 ("An employee's conduct does not fall outside the scope of employment simply because it is discouraged, or even prohibited"); *Laidlaw Transit, Inc. v. Crouse ex rel. Crouse*, 53 P.3d 1093, 1098–99 (Alaska 2002) (holding school bus company vicariously liable for accident caused by driver under influence of marijuana, even though company explicitly forbid marijuana use and driver was reckless).

Case No. 3:20-cv-00156-SLG, *Mendenhall v. United States*
Order re Motion to Dismiss
Page 10 of 15

Case 3:20-cv-00156-SLG   Document 19   Filed 03/17/21   Page 10 of 15

In conclusion, Plaintiff has not shown by a preponderance of the evidence that Mr. Ireton was not performing the type of work that he was hired to perform.

### B. Authorized Time and Space Limits

The next factor considered is whether Mr. Ireton was acting within ANTHC's time and space limits during the alleged incident. According to Defendant, Mr. Ireton was working in his capacity as a security guard at the time of the incident.[44] And he was assigned to provide security to the "entire [ANMC] campus."[45] Plaintiff offers no rebuttal here. In fact, Plaintiff's version of events support the conclusion that Mr. Ireton was within his authorized space and time limits.[46] Accordingly, the Court finds that Plaintiff has not shown by a preponderance of the evidence that Mr. Ireton was acting outside of ANTHC's authorized space and time limits.

### C. Acting in Furtherance of Employer's Interests

The final question is whether Mr. Ireton acted to further his employer's interests. According to Defendant, "[a]t all relevant times, Mr. Ireton was acting to further his employer's interests in maintaining a safe and secure environment on

---

[44] Docket 17 at 12 (citing Docket 17-1 at 7:23–8:14 (Ireton Dep.); Docket 17-4 (Ireton Time Card)).

[45] Docket 17-1 at 9:1–3 (Ireton Dep.); Docket 17-5 (Incident Report).

[46] Docket 16 at 2 ("John Ireton worked in the security department of the Alaska Native Tribal Health Consortium (ANTHC) for approximately six years. On July 2[7], 2018, he responded to a report of a potential disturbance in a patient room at the Alaska Native Medical Center (ANMC).") (citation omitted).

Case No. 3:20-cv-00156-SLG, *Mendenhall v. United States*
Order re Motion to Dismiss
Page 11 of 15

Case 3:20-cv-00156-SLG   Document 19   Filed 03/17/21   Page 11 of 15

the ANMC campus."[47]  Plaintiff does not provide any evidence rebutting Defendant's assertion.  Accordingly, Plaintiff has not shown by a preponderance of the evidence that Mr. Ireton was not acting to further ANTHC's interests.

In conclusion, the Court finds that Plaintiff has not disproven the U.S. Attorney's scope of employment certification by a preponderance of the evidence.  Mr. Ireton is therefore "deemed" a federal employee for FTCA purposes pursuant to the ISDEAA.  Accordingly, the FTCA is Plaintiff's exclusive remedy.

### III. Exhaustion of Administrative Remedies

Because the FTCA applies here, Plaintiff must have exhausted his administrative remedies before pursuing this claim in federal court.[48]  Defendant asserts that, "[a]ssuming that the United States is the proper defendant, there is no dispute that the Court lacks jurisdiction over the present lawsuit because Plaintiff did not exhaust his administrative remedies before filing this suit."[49]  Plaintiff essentially agrees, stating that the FTCA "administrative exhaustion

---

[47] Docket 17 at 13 (Second Reply); Docket 17-3 at 1 (Security Officer Job Description) (summarizing security guard job as, in part, providing "a safe and secure environment for employees, patients and visitors by protecting ANTHC . . . property against fire, theft, harm, vandalism, and illegal entry.").

[48] 28 U.S.C. § 2675(a) ("An action shall not be instituted upon a claim against the United States . . . unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail.").

[49] Docket 17 at 16 (Second Reply); Docket 7 at 4–5 (Mot. to Dismiss); Docket 10 at 6–7 (Reply).

Case No. 3:20-cv-00156-SLG, *Mendenhall v. United States*
Order re Motion to Dismiss
Page 12 of 15

Case 3:20-cv-00156-SLG   Document 19   Filed 03/17/21   Page 12 of 15

requirement applies only if Mr. Ireton was 'acting within the scope of his office or employment[.]'"[50]

On February 13, 2020, Plaintiff brought suit in state court.[51] Plaintiff then submitted an SF-95 administrative claim form in March 2020.[52] On June 29, 2020, Defendant removed the action to federal court, prior to the resolution of Plaintiff's administrative claim.[53] Accordingly, the Court finds that Plaintiff did not exhaust his administrative remedies and therefore lacks subject matter jurisdiction over Plaintiff's claims.[54]

## IV. Plaintiff's Additional Arguments

Plaintiff makes two other assertions. First, Plaintiff maintains that "[e]ven if this court were to rule that Mr. Ireton's use of force fell within the scope his

---

[50] Docket 16 at 5–6 (Supp. Opp.).

[51] Docket 1-1 (Compl).

[52] Docket 7-1 (SF-95).

[53] *See* Docket 1 (Notice of Removal); *see also* Docket 8 at 5 (Opp.) ("Mr. Mendenhall filed his claim with the federal Department of Health and Human Services on March 20, 2020, which gives them until September 20, 2020 to render a decision.").

[54] *McNeil v. United States*, 508 U.S. 106, 113 (1993) ("The FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies."); *D.L. by & through Junio v. Vassilev*, 858 F.3d 1242, 1245, 1247 (9th Cir. 2017) ("In general, the FTCA's exhaustion requirement demands that a plaintiff exhaust his administrative remedies before he files an FTCA claim in federal court."); *Burns v. United States*, 764 F.2d 722, 724 (9th Cir. 1985) ("The claim requirement of section 2675 is jurisdictional in nature and may not be waived."); *Staple v. United States*, 740 F.2d 766, 768 (9th Cir. 1984) ("We hold, therefore, that jurisdiction under section 2675(a) is determined as of the date that the Attorney General removes the suit to federal court, rather than the date the plaintiff files the action against the [defendant] in state court.").

Case No. 3:20-cv-00156-SLG, *Mendenhall v. United States*
Order re Motion to Dismiss
Page 13 of 15

Case 3:20-cv-00156-SLG  Document 19  Filed 03/17/21  Page 13 of 15

employment, [Plaintiff] is still permitted to proceed against Mr. Ireton in his individual capacity" because the "FTCA does not bar claims against federal employees for intentional torts such as assault and battery if their actions were deemed to be negligent."[55] Plaintiff is mistaken. The FTCA provides the sole remedy against federal tortfeasors acting within the scope of their employment; it is "exclusive of any other civil action or proceeding for monetary damages."[56] Second, Plaintiff maintains that he can bring other constitutional and civil rights claims under the United States and Alaska Constitutions.[57] But Plaintiff provides no legal basis from which this Court could determine that such claims could move forward. For a plaintiff to have a claim under 42 U.S.C. § 1983 or *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971), a defendant must be a state or federal actor, respectively. Mr. Ireton is plainly not a state actor and is only considered a "federal employee" for FTCA purposes.[58] Additionally, Alaska does not recognize tort claims for implied constitutional causes of action.[59] Accordingly, Plaintiff's two additional arguments lack merit.

---

[55] Docket 16 at 8 (Supp. Opp.).

[56] *Drake*, 87 F.3d at 1076 (quoting 28 U.S.C. § 2679(b)(1)); *Smith*, 499 U.S. at 166.

[57] Docket 16 at 11–12 (Supp. Opp.); Docket 1-1 at 4 (Compl.) (Fourth Cause of Action).

[58] *See supra* n.8; *see also Sanchez v. Baracker*, Case No. CIV 01-0299, 2002 WL 35649877, at *1–2 (D.N.M. June 10, 2002) (rejecting that tribal actors become federal actors for purposes of a *Bivens* action by virtue of the ISDEAA).

[59] *Lowell v. Hayes*, 117 P.3d 745, 753 (Alaska 2005).

Case No. 3:20-cv-00156-SLG, *Mendenhall v. United States*
Order re Motion to Dismiss
Page 14 of 15

Case 3:20-cv-00156-SLG   Document 19   Filed 03/17/21   Page 14 of 15

## CONCLUSION

In light of the foregoing, IT IS ORDERED that Defendant's Motion to Dismiss at Docket 7 is GRANTED. IT IS FURTHER ORDERED that Plaintiff's Complaint at Docket 1-1 is DISMISSED for lack of subject matter jurisdiction.

DATED this 17th day of March, 2021 at Anchorage, Alaska.

*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE

Case No. 3:20-cv-00156-SLG, *Mendenhall v. United States*
Order re Motion to Dismiss
Page 15 of 15

Case 3:20-cv-00156-SLG   Document 19   Filed 03/17/21   Page 15 of 15